UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET D. CONNER,<br><br>           Plaintiff,<br>   v.<br>CAROLYN W. COLVIN,<br><br>           Defendant. | Case No. 13-cv-03324-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REMANDING CASE FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 16, 21 |

Janet D. Conner ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant"). Pending before the Court are the parties' cross-motions for summary judgment. Having considered the papers filed by the parties and the administrative record, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's motion for summary judgment, and remands this case for further proceedings consistent with this order.

## I.    BACKGROUND

### A.    Plaintiff's applications

Plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB") on January 22, 2010 and a Title XVI application for Supplemental Security Income ("SSI") on January 27, 2010. (Administrative Record ("AR") at 78-79, 136-37, 139-43.) She alleged that she became disabled on June 30, 2007, due to right knee pain, hand pain, back pain, and high blood pressure. (*Id.* at 82, 91, 136, 140.) The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. (*Id.* at 82-86, 91-95.)

**B.    The administrative hearing**

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 96.) ALJ Mary P. Parnow held the hearing on August 29, 2011.  (AR at 96-97).  Plaintiff, who was represented by counsel, testified at the hearing, as did Malcolm J. Brodzinsky, a vocational expert ("VE").

### 1.    Plaintiff's testimony

Plaintiff testified that she was 53 years old at the time of the hearing, possessed a high school diploma, and had last worked in July 2008, doing part-time office work at a warehouse. (*Id.* at 52.)  She stated that she stopped doing that work because sitting bothered her, she was taking breaks and "they didn't like that." (*Id.* at 53.)  She indicated that every 30 minutes, she would elevate her leg for about 10 minutes and that she could not work while doing so because of the pain. *(Id.)* At home, she elevates her leg on two pillows for at least five or six hours because she's in bed most of the time. (*Id.* at 64.) She does this because of the pain and to take some pressure of her knee. (*Id.* at 65.)

Prior to her office work, Plaintiff was employed as a catering cook and pastry chef for about three years. (*Id.* at 53-54).  In that position, she would cook, cater, and serve food at different events. (*Id.* at 54.)  She would also lift chaffing dishes weighing approximately 20 to 25 pounds. (*Id.* at 54-55.)  Before her work as a cook and pastry chef, Plaintiff worked as a floor supervisor at a telephone call center, supervising 60 operators, walking the floor, taking over phone calls, and troubleshooting. (*Id.* at 55.)  She held that job for three years. (*Id.* at 56.)  She testified that she would not be able to return to that type of work because of "the sitting for periods of time and the walking and [her] hands are messed up and [her] back." *(Id.)* She also indicated that she worked as a dishwasher and a cook at a soul food restaurant, and did some work at a bakery at one point. (*Id.* at 58.)

Plaintiff further testified that she had been receiving worker's compensation as a result of a knee injury she sustained while lifting a chaffing dish during a catering event. (*Id.* at 60.)  She indicated that the claim had been settled, and a portion of the settlement was intended to cover a knee replacement. *(Id.)* According to Plaintiff, she experiences a "dull throbbing pain all the

2

time," her knee is stiff in the morning, and it's worse during cold weather. *(Id.)* She stated that it takes her "a minute to get around, to unwind a little bit" and sometimes she has to ice her knee before she bathes. *(Id.)*

Plaintiff indicated that she had two surgeries and went to therapy twice. (*Id.* at 61.) After the first surgery,[1] she felt "a little relief at first, [and she] even tried to go back to work" but then she went back to the doctor and needed another surgery. *(Id.)* She stated that she experienced no relief after the second surgery. *(Id.)* Her pain is about a seven or eight in the morning when she first wakes up, and she can get the pain down to a five or six after she ices her knee and takes her pain pills. (*Id.* at 61-62.) At the time of her second surgery,[2] her doctor advised her that she needed a knee replacement. (*Id.* at 61.)

With respect to other impairments, Plaintiff testified that she's been diagnosed with sciatic nerve, arthritis, and depression. (*Id.* at 62.) She also testified that she can sit and stand for about 15-20 minutes, walk for about a half block before stopping to take a break, and lift "maybe five pounds." (*Id.* at 62, 63.) She stated that she cannot lift her one-year old grandchild. (*Id.* at 64.) She also indicated that she has problems with concentration and focus as a result of her pain medication. (*Id.* at 65.) On one occasion, she forgot she was boiling eggs and woke up to the sound of her smoke detector, and on another, she left some water running. *(Id.)* Plaintiff also stated that some of her medications give her bad headaches, sweats, and trouble sleeping. (*Id.* at 65, 66.) She takes hydrocodone once every eight hours or once every four hours if the pain is bad. (*Id.* at 66.)

Plaintiff also testified that she lives alone in an apartment and that her daughter, who was 28 at the time of the hearing, visits about four times a week. (*Id.* at 67, 68.) She helps with the cleaning, does the grocery shopping, and prepares her mother's meals for the week, which Plaintiff reheats in the microwave. (*Id.* at 67, 68.) As for common day-to-day activities, Plaintiff stated that she can wash her hair on her own, which she keeps short because it's easier to manage, she

---

[1] Plaintiff underwent her first surgery to repair a right knee medial meniscus tear on February 6, 2008. AR at 284.

[2] Plaintiff's second surgery occurred on June 8, 2009. *Id.* at 289.

3

does not drive because it causes her too much pain, and she does not go out or socialize too much but goes to church when she can, where she sits in the back so that she does not interrupt everyone when she has to get up and go outside. (*Id.* at 69, 70.)

### 2. The VE's testimony

The VE testified that Plaintiff's past work as a catering cook was semi-skilled work with a light physical demand. (*Id.* at 72.) He classified her work as a customer service clerk as skilled work with sedentary physical demands. *(Id.)* Plaintiff's work as a dishwasher was unskilled medium work, while her work as a cook was skilled work with medium physical demands. (*Id.* at 73.) Her work as a floor supervisor at a call center qualified as skilled work with sedentary physical demands. *(Id.)*

The VE considered various hypotheticals posed by the ALJ and by Plaintiff's counsel. *(Id.)* The ALJ asked the VE to first consider an individual who was 48 at onset, 53 at the time of the hearing, with a high school education, and with the past relevant work he had described. *(Id.)* This individual could (1) stand and walk for four hours in an eight hour day, with breaks, (2) sit for six hours in an eight hour day, also with breaks, (2) carry 10 pounds frequently and 20 pounds occasionally, (3) push and pull devices up to 20 pounds, (4) occasionally bend, squat, kneel, crouch, climb, and crawl, and (5) would need a cane for ambulation over three to four blocks. *(Id.)* When asked whether such an individual could perform Plaintiff's past relevant work, the VE stated that the individual could be a customer service clerk and a floor supervisor in a call center. (*Id.* at 74.)

The ALJ then asked the VE to consider an individual with the same age, education, and work experience, but with different limitations. *(Id.)* This individual could not crawl, kneel, climb, push or pull "in regards to the right knee," would be restricted to light work as defined in the worker's compensation context (i.e., work that involves standing or walking with minimal demands for physical effort). *(Id.)* In considering this second hypothetical, the VE gave the same response. *(Id.)*

Plaintiff's attorney asked the VE to revisit the first hypothetical, with the additional limitation that the individual would require a cane for all standing and walking. (*Id.* at 75.) When

4

1    asked whether that would alter his previous response, the VE stated that it would remain

2    unchanged. *(Id.)*

3    Plaintiff's counsel also asked the VE to reconsider the second hypothetical as if it

4    concerned an individual who needed to sit and stand at will. *(Id.)* In response to that modified

5    hypothetical, the VE testified that the additional limitation would preclude both positions absent

6    an accommodation. *(Id.)*

7    The VE, also in response to additional hypotheticals posed by Plaintiff's attorney, testified

8    that an individual who needed to elevate one leg between six to 12 inches 10 to 20 percent of the

9    workday would be precluded from performing that work. *(Id.)* When considering an individual

10   who would need to take a 15 minute unscheduled break once every hour, the VE testified that such

11   a limitation would preclude all work. (*Id.* at 76.) He further testified that if someone who was

12   performing the work mentioned in either of the ALJ's two hypotheticals was going to be absent

13   four days per month that would "preclude that work and all other work." (*Id.* at 76.)

14   **C.    The ALJ's decision**

15   On September 23, 2011, the ALJ issued an unfavorable decision. (*Id.* at 15-22). In

16   reaching her decision, the ALJ followed the five-step sequential process that governs Social

17   Security disability determinations. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a). At step one, the

18   ALJ found that Plaintiff has not engaged in substantial gainful activity since June 30, 2007, the

19   alleged onset date. (*Id.* at 17.) At step two, the ALJ determined that Plaintiff suffers from two

20   severe impairments: right knee injury status post two partial right knee meniscectomies and

21   obesity. *(Id.)* She based that determination on "[t]he evidence of record, including the testimony

22   of the claimant[,]" which supported a finding that these "medical impairments significantly limit

23   her ability to perform basic work activities." *(Id.)* At step three, the ALJ determined that Plaintiff

24   does not have an impairment or combination of impairments that meets or medically equals one of

25   the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.* at 18.) She found that the

26   medical evidence did not support a finding to the contrary. *(Id.)*

27   Before proceeding to step four, the ALJ determined that Plaintiff has the residual

28   functional capacity to carry 20 pounds occasionally and 10 pounds frequently, stand and walk for

four hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and pull devices up to 20 pounds. (*Id.*at 18-21.) She also determined that Plaintiff can occasionally bend, squat, kneel, crouch, climb, and crawl, though "a cane is required for ambulation over 3 to 4 blocks." *(Id.)* The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 20.) To support this finding, the ALJ stated:

> The objective evidence does not support the claimant's allegations. Claimant was released to work, and it appears only did not work because there was no work available. Further, despite the claimant's complaints of hand problems, there were no sensory or motor deficits notes in hands at consultative examination. In addition, in regard to the claimant's cane, Dr. Krinsky advised claimant to use the cane as needed, not all the time, and notes from Dr. Krinsky indicated that she only occasionally used a cane. Claimant testified to very limited activities of daily living, stating that her daughter helps with cooking, cleaning and shopping, which seems at odds with her report to the consultative examiner that she can do light chores around the house but not vacuuming, cleaning tubs or kneeling and bending. Despite her complaints of back pain, objective evidence only revealed mild degenerative disc disease of the lumbar spine. Finally, contrary to claimant's testimony, all of the treatment notes document that claimant's knee problem improved following her second surgery.

(*Id.* at 20-21.)

In determining Plaintiff's residual functional capacity, the ALJ placed great weight on the opinion of Dr. Rana "based on h[er] examining relationship and because his conclusions are the most consistent with the objective findings in the medical records." (*Id.* at 20.) Dr. Rana, a consultative examiner, completed an internal medicine evaluation on April 9, 2010. (*Id.* at 362.) In her report, she noted that none of Plaintiff's previous medical records were available for review and that Plaintiff was providing her medical history herself. *(Id.)* Dr. Rana indicated that Plaintiff's chief complaints were pain in the knees, carpal tunnel syndrome, lower back pain, high blood pressure, hypercholesterolemia, and heartburn. *(Id.)* The physical examination Dr. Rana conducted revealed mild lower back tenderness and mild tenderness in both knees. (*Id.* at 363, 364.) Dr. Rana diagnosed Plaintiff with chronic pain in her knees, probable mild carpal tunnel

1    syndrome in both hands, lower back pain most probably secondary to mild degenerative
2    disc/degenerative joint disease, a history of hypertension, hypercholesterolemia, and probable
3    gastroesophageal reflux disease.  (*Id.* at 364.)  She opined that Plaintiff can (1) stand and walk for
4    four hours in an eight-hour day with breaks, (2) sit for six hours in an eight-hour day with breaks,
5    (3) carry 10 pounds frequently and 20 pounds occasionally, (4) push and pull devices up to 20
6    pounds, (5) occasionally bend, squat, kneel, crouch, climb, and crawl, and (5) ambulate over three
7    to four blocks with use of a cane.  (*Id.*)

8           The ALJ gave some weight to the Dr. Charles' assessment, "to the extent consistent with
9    Dr. Rana's."  (*Id.* at 20.)  Dr. Charles examined Plaintiff on two occasions, first on October 30,
10   2008 and a second time on January 13, 2010.  (*Id.* at 488-497, 506-509.)  In his first report, Dr.
11   Charles opined that Plaintiff had suffered a probable medial meniscus tear.  *(Id.)*  He ordered an
12   MRI, the results of which were "consistent with a recurrent flap tear of the medial meniscus and
13   free edge lateral meniscal tear." (*Id.* at 498.)  In his second report, Dr. Charles noted that Plaintiff
14   underwent a second surgery on June 8, 2009, at which time Dr. Krinsky, who performed the
15   surgery, noted a new tear in the anterior horn of the medial meniscus.  (*Id.* at 492.)  Dr. Charles
16   also noted that there was marked swelling in Plaintiff's right knee.  (*Id.* at 489, 491.)  He
17   considered Plaintiff to be a candidate for a total knee replacement.  (*Id.* at 496.)

18          The ALJ placed little weight on the opinions of Dr. Young, one of Plaintiff's treating
19   physicians, and Dr. Krinsky, who performed Plaintiff's knee surgeries.  (*Id.* at 20.)  Dr. Krinsky
20   completed a medical source statement on August 12, 2011.  (*Id.* at 571-75.)  According to Dr.
21   Krinsky, Plaintiff's first visit to his office occurred on February 12, 2008 and continued on a
22   monthly basis.  *(Id.)*  Dr. Krinsky opined that Plaintiff can sit for less than two hours in an eight-
23   hour workday and stand/walk for less than two hours in an eight-hour workday.  (*Id.* at 574.)  He
24   also opined that plaintiff would have to walk every 15 minutes for five minutes at a time, would
25   need a job that allowed her to shift positions at will because of pain, muscle weakness, and chronic
26   fatigue, would need to take 15-minute unscheduled breaks every 30 minutes, and would have to
27   elevate her leg to chair width.  *(Id.)*  He also indicated that Plaintiff must use a cane or other
28

1    assistive device and that she would be absent from work more than four days per month due to her
2    impairments or treatment. (*Id.* at 574, 575.)

3          The ALJ considered Dr. Krinsky's progress notes "completely inconsistent with his
4    assessment of [*sic*] that claimant could sit/stand/walk less than 2 hours." (*Id.* at 20.) She noted
5    that Dr. Krinsky returned Plaintiff to full duty as of November 11, 2009, but indicated that there
6    was no work available. *(Id.)* She also noted that (1) treatment notes from January 2010 indicated
7    that claimant only occasionally uses a cane, (2) notes from March and May 2010 indicated that
8    there was still no work available, (3) notes from September 2010 indicated that claimant was
9    getting better by the week but that no work was available, (4) opinions from July 2010 and August
10   2011 were primarily based on claimant's subjective complaints. *(Id.)* The ALJ stated that
11   treatment records clearly showed that Plaintiff improved following the second knee procedure.
12   *(Id.)*

13         The ALJ did not give any reasons for placing little weight on Dr. Young's opinion other
14   than stating that his opinion "appear[ed] to be primary based on the claimant's subjective
15   complaints." (*See id.*) Dr. Young had completed a physician's medical source statement on July
16   14, 2010, in which he indicated that he had seen Plaintiff on a monthly basis since March 4, 2009.
17   (*Id.* 439-42.) He noted that Plaintiff's prognosis was "guarded," that Plaintiff complained of
18   throbbing pain in her right knee that is worse when standing and sitting for prolonged periods of
19   time. *(Id.)* He stated that Plaintiff is a candidate for total knee replacement. *(Id.)* He opined that
20   Plaintiff would need to take a 15-minute unscheduled break at least every hour, that Plaintiff
21   would need to elevate her leg between 6-12 inches with prolonged sitting for approximately 10-
22   20% of the workday, and that Plaintiff must use a cane or other assistive device. *(Id.)* He also
23   opined that Plaintiff would likely be absent from work for more than four days per month as a
24   result of her impairments or treatment. (*Id.* at 442.)

25         At step four, the ALJ determined that Plaintiff's medical impairments did not preclude her
26   from performing her past relevant work as a customer service clerk or as a floor supervisor at a
27   call center. (*Id.* at 21.) She relied on the VE's testimony that an individual with Plaintiff's
28   limitations could perform that type of work. *(Id.)* The ALJ found that Plaintiff "is able to perform

these jobs as actually and generally performed," and concluded that Plaintiff has not been under a disability from June 30, 2007, the alleged onset date, through September 23, 2011, the date of her decision. *(Id.)*

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (*Id.* at 10.) The Appeals Council denied review on May 17, 2013, and the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1-6.) She filed her complaint in this Court on July 17, 2013, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the decision is 1) based on legal error or 2) not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the court must consider the evidence as a whole, weighing both the evidence that supports, and the evidence that undermines, the Commissioner's decision. *Id.* "Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The court, however, may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Id.* (internal quotations and citations omitted). Furthermore, the court's review is limited to the reasons the ALJ provided in the disability determination. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The court "may not affirm the ALJ on a ground upon which the he did not rely.").

## III.   ANALYSIS

Plaintiff moves for an order reversing the ALJ's decision with instructions for immediate payment of benefits, or, in the alternative, reversing the ALJ's decision and remanding the case for

9

1  further proceedings. (Pl.'s Mot. Summ. J. at 28, Dkt. No. 16.) She argues that reversal is

2  warranted for three separate reasons. (*Id.* at 17, 21, 24; Pl.'s Reply at 1, Dkt. No. 22.) She asserts

3  that the ALJ erred (1) in weighing the medical evidence in the record, (2) by rejecting her

4  subjective complaints, and (3) by relying on answers to incomplete hypothetical questions that he

5  posed to the VE. (Pl.'s Mot. Summ. J. at 17, 21, 24.)

### A. The ALJ erred when she placed little weight on Dr. Young's opinion without specific and legitimate reasons supported by substantial evidence in the record.

A treating physician's opinion is entitled to more weight than the opinion of a non-treating physician. 20 C.F.R. § 404.1527(c)(1)-(2). More specifically, a treating physician's opinion is entitled to controlling weight if it is well-supported and consistent with the other substantial evidence in the record. *Id.* § 404.1527(d)(2). When a treating doctor's opinion is not contradicted, an ALJ may reject it only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (internal quotations and citation omitted). But when a treating physician's opinion is contradicted by the opinion of another doctor, an ALJ may reject it based on "specific and legitimate reasons supported by substantial evidence in the record . . . ." *Id.* (internal quotations and citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Plaintiff argues, and the Court agrees, that the ALJ erred when she did not give Dr. Young's opinion controlling weight without providing sufficient reasons for doing so. (Pl.'s Mot. Summ. J. at 20.) In her decision, the ALJ stated that she placed little weight on his opinion solely because it was based on Plaintiff's subjective pain complaints. (AR at 20.) While Dr. Young's report includes a list of Plaintiff's symptoms, it also references diagnoses that reflect Plaintiff's status following her two surgeries, and it notes that Plaintiff visited Dr. Young on a monthly basis beginning in March 4, 2009. (*Id.* at 439.) In his report, Dr. Young also noted that Plaintiff's right knee MRI showed a recurrent tear and moderate osteoarthritis. *(Id.)* In short, the report includes more than a mere recitation of Plaintiff's subjective pain complaints. In light of this, the ALJ's

1  reason for placing little weight on Dr. Young's opinion, i.e., that the opinion was based on

2  Plaintiff's subjective pain complaints, is not legitimate and unsupported by substantial evidence.

3       Accordingly, the ALJ erred in failing to properly consider Dr. Young's opinion.

### B. The ALJ erred when she gave Dr. Rana's opinion outcome-determinative weight.

Plaintiff's argument that the ALJ also failed to give sufficient reasons for placing great weight on Dr. Rana's opinion is also well-taken. (*Id.* at 24.) While the Commissioner asserts that the ALJ assigned the proper weight to the opinion because the independent findings of a consultative examiner may constitute substantial evidence, the Ninth Circuit has explained that "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v.* Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

Here, Dr. Rana did not make independent findings, she only reached different conclusions than those contained in Dr. Young's opinion. For example, Dr. Rana noted that Plaintiff suffers from mild tenderness, chronic pain, and probable mild arthritis in her knees. (*Id.* at 364.) Dr. Young also indicated that Plaintiff experiences right knee pain and suffers from osteoarthritis. (*Id.* at 439.) Dr. Rana's opinion, then, only differed from Dr. Young's in terms of the limitations she ascribed to Plaintiff. Thus, without more from the Commissioner than assertions suggesting that Dr. Rana's opinion provides independent clinical findings constituting substantial evidence, the Court cannot conclude that Dr. Rana's opinion justifies the ALJ's failure to assign Dr. Young's opinion proper weight. *See Orn*, 495 F.3d at 632 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.") (citation omitted).

Accordingly, the ALJ erred by giving Dr. Rana's opinion outcome-determinative weight. Given the errors discussed above, the Court also concludes that the ALJ's finding of medical improvement, her determination that Plaintiff was not fully credible, and the hypotheticals she posed to the VE, which were necessarily informed by the ALJ's erroneous consideration of the

medical evidence, are similarly flawed.  Accordingly, the ALJ shall revisit these aspects of her disability determination on remand after giving proper consideration to Dr. Young's opinion.

### IV.     CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED, Defendant's motion for summary judgment is DENIED, and this case is remanded for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: 09/10/2014

KANDIS A. WESTMORE
United States Magistrate Judge