UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET D. CONNER,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>        Defendant. | Case No. 13-cv-03324-KAW<br><br>**ORDER GRANTING MOTION TO ALTER JUDGMENT**<br><br>Re: Dkt. No. 26 |

On September 10, 2014, the Court granted Plaintiff Janet D. Conner's motion for summary judgment, denied Defendant Carolyn W. Colvin's motion for summary judgment, and remanded the case for further proceedings. Judgment was entered consistent with that order. Plaintiff now moves to alter that judgment pursuant to Federal Rule of Civil Procedure 59(e). She asks that the case be remanded not for further proceedings, but for immediate payment of disability insurance benefits. Defendant opposes the motion. For the reasons set forth below, the motion is GRANTED, and this case is REMANDED for calculation and payment of benefits.

### I.  BACKGROUND

**A.  Plaintiff's applications**

Plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB") on January 22, 2010 and a Title XVI application for Supplemental Security Income ("SSI") on January 27, 2010. (Administrative Record ("AR") at 78-79, 136-37, 139-43.) She alleged that she became disabled on June 30, 2007, due to right knee pain, hand pain, back pain,

1   and high blood pressure. (*Id.* at 82, 91, 136, 140.) The Social Security Administration ("SSA")

2   denied Plaintiff's applications initially and on reconsideration. (*Id.* at 82-86, 91-95.)

### B. The administrative hearing

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 96.) ALJ Mary P. Parnow held the hearing on August 29, 2011. (AR at 96-97). Plaintiff, who was represented by counsel, testified at the hearing, as did Malcolm J. Brodzinsky, a vocational expert ("VE").

#### 1. Plaintiff's testimony

Plaintiff testified that she was 53 years old at the time of the hearing, possessed a high school diploma, and had last worked in July 2008, doing part-time office work at a warehouse. (*Id.* at 52.) She stated that she stopped doing that work because sitting bothered her, she was taking breaks and "they didn't like that." (*Id.* at 53.) She indicated that every 30 minutes, she would elevate her leg for about 10 minutes and that she could not work while doing so because of the pain. *(Id.)* At home, she elevates her leg on two pillows for at least five or six hours because she's in bed most of the time. (*Id.* at 64.) She does this because of the pain and to take some pressure off her knee. (*Id.* at 65.)

Prior to her office work, Plaintiff was employed as a catering cook and pastry chef for about three years. (*Id.* at 53-54). In that position, she would cook, cater, and serve food at different events. (*Id.* at 54.) She would also lift chaffing dishes weighing approximately 20 to 25 pounds. (*Id.* at 54-55.) Before her work as a cook and pastry chef, Plaintiff worked as a floor supervisor at a telephone call center, supervising 60 operators, walking the floor, taking over phone calls, and troubleshooting. (*Id.* at 55.) She held that job for three years. (*Id.* at 56.) She testified that she would not be able to return to that type of work because of "the sitting for periods of time and the walking and [her] hands are messed up and [her] back." *(Id.)* She also indicated that she worked as a dishwasher and a cook at a soul food restaurant, and did some work at a bakery at one point. (*Id.* at 58.)

Plaintiff further testified that she had been receiving worker's compensation as a result of a knee injury she sustained while lifting a chaffing dish during a catering event. (*Id.* at 60.) She

2

indicated that the claim had been settled, and a portion of the settlement was intended to cover a knee replacement. (*Id.*) According to Plaintiff, she experiences a "dull throbbing pain all the time," her knee is stiff in the morning, and it's worse during cold weather. (*Id.*) She stated that it takes her "a minute to get around, to unwind a little bit," and sometimes she has to ice her knee before she bathes. (*Id.*)

Plaintiff indicated that she had two surgeries and went to therapy twice. (*Id.* at 61.) After the first surgery,[1] she felt "a little relief at first, [and she] even tried to go back to work" but then she went back to the doctor and needed another surgery. (*Id.*) She stated that she experienced no relief after the second surgery. (*Id.*) Her pain is about a seven or eight in the morning when she first wakes up, and she can get the pain down to a five or six after she ices her knee and takes her pain pills. (*Id.* at 61-62.) At the time of her second surgery,[2] her doctor advised her that she needed a knee replacement. (*Id.* at 61.)

With respect to other impairments, Plaintiff testified that she's been diagnosed with sciatic nerve, arthritis, and depression. (*Id.* at 62.) She also testified that she can sit and stand for about 15-20 minutes, walk for about a half block before stopping to take a break, and lift "maybe five pounds." (*Id.* at 62, 63.) She stated that she cannot lift her one-year old grandchild. (*Id.* at 64.) She also indicated that she has problems with concentration and focus as a result of her pain medication. (*Id.* at 65.) On one occasion, she forgot she was boiling eggs and woke up to the sound of her smoke detector, and on another, she left some water running. (*Id.*) Plaintiff also stated that some of her medications give her bad headaches, sweats, and trouble sleeping. (*Id.* at 65, 66.) She takes hydrocodone once every eight hours or once every four hours if the pain is bad. (*Id.* at 66.)

Plaintiff also testified that she lives alone in an apartment and that her daughter, who was 28 at the time of the hearing, visits about four times a week. (*Id.* at 67, 68.) She helps with the cleaning, does the grocery shopping, and prepares her mother's meals for the week, which Plaintiff

---

[1] Plaintiff underwent her first surgery to repair a right knee medial meniscus tear on February 6, 2008. AR at 284.

[2] Plaintiff's second surgery occurred on June 8, 2009. *Id.* at 289.

3

1  reheats in the microwave. (*Id.* at 67, 68.) As for common day-to-day activities, Plaintiff stated
2  that she can wash her hair on her own, which she keeps short because it's easier to manage, she
3  does not drive because it causes her too much pain, and she does not go out or socialize too much
4  but goes to church when she can, where she sits in the back so that she does not interrupt everyone
5  when she has to get up and go outside. (*Id.* at 69, 70.)

### 2. The VE's testimony

The VE testified that Plaintiff's past work as a catering cook was semi-skilled work with a light physical demand. (*Id.* at 72.) He classified her work as a customer service clerk as skilled work with sedentary physical demands. *(Id.)* Plaintiff's work as a dishwasher was unskilled medium work, while her work as a cook was skilled work with medium physical demands. (*Id.* at 73.) Her work as a floor supervisor at a call center qualified as skilled work with sedentary physical demands. *(Id.)*

The VE considered various hypotheticals posed by the ALJ and by Plaintiff's counsel. *(Id.)* The ALJ asked the VE to first consider an individual who was 48 at onset, 53 at the time of the hearing, with a high school education, and with the past relevant work he had described. *(Id.)* This individual could (1) stand and walk for four hours in an eight hour day, with breaks, (2) sit for six hours in an eight hour day, also with breaks, (2) carry 10 pounds frequently and 20 pounds occasionally, (3) push and pull devices up to 20 pounds, (4) occasionally bend, squat, kneel, crouch, climb, and crawl, and (5) would need a cane for ambulation over three to four blocks. *(Id.)* When asked whether such an individual could perform Plaintiff's past relevant work, the VE stated that the individual could be a customer service clerk and a floor supervisor in a call center. (*Id.* at 74.)

The ALJ then asked the VE to consider an individual with the same age, education, and work experience, but with different limitations. *(Id.)* This individual could not crawl, kneel, climb, push or pull "in regards to the right knee" and would be restricted to light work as defined in the worker's compensation context (i.e., work that involves standing or walking with minimal demands for physical effort). *(Id.)* In considering this second hypothetical, the VE gave the same response. *(Id.)*

4

Plaintiff's attorney asked the VE to revisit the first hypothetical, with the additional limitation that the individual would require a cane for all standing and walking. (*Id.* at 75.) When asked whether that would alter his previous response, the VE stated that it would remain unchanged. (*Id.*)

Plaintiff's counsel also asked the VE to reconsider the second hypothetical as if it concerned an individual who needed to sit and stand at will. (*Id.*) In response to that modified hypothetical, the VE testified that the additional limitation would preclude both positions absent an accommodation. (*Id.*)

The VE, also in response to additional hypotheticals posed by Plaintiff's attorney, testified that an individual who needed to elevate one leg between six to 12 inches 10 to 20 percent of the workday would be precluded from performing that work. (*Id.*) When considering an individual who would need to take a 15-minute unscheduled break once every hour, the VE testified that such a limitation would preclude all work. (*Id.* at 76.) He further testified that if someone who was performing the work mentioned in either of the ALJ's two hypotheticals was going to be absent four days per month, that would "preclude that work and all other work." (*Id.* at 76.)

**C.     The ALJ's decision**

On September 23, 2011, the ALJ issued an unfavorable decision. (*Id.* at 15-22). In reaching her decision, the ALJ followed the five-step sequential process that governs Social Security disability determinations. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 30, 2007, the alleged onset date. (*Id.* at 17.) At step two, the ALJ determined that Plaintiff suffers from two severe impairments: right knee injury status post two partial right knee meniscectomies and obesity. (*Id.*) She based that determination on "[t]he evidence of record, including the testimony of the claimant[,]" which supported a finding that these "medical impairments significantly limit her ability to perform basic work activities." (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.* at 18.) She found that the medical evidence did not support a finding to the contrary. (*Id.*)

5

Before proceeding to step four, the ALJ determined that Plaintiff has the residual functional capacity to carry 20 pounds occasionally and 10 pounds frequently, stand and walk for four hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and pull devices up to 20 pounds. (*Id.* at 18-21.) She also determined that Plaintiff can occasionally bend, squat, kneel, crouch, climb, and crawl, though "a cane is required for ambulation over 3 to 4 blocks." *(Id.)* The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they [we]re inconsistent with the above residual functional capacity assessment." (*Id.* at 20.) To support this finding, the ALJ stated:

> The objective evidence does not support the claimant's allegations. Claimant was released to work, and it appears only did not work because there was no work available. Further, despite the claimant's complaints of hand problems, there were no sensory or motor deficits noted in hands at consultative examination. In addition, in regard to the claimant's cane, Dr. Krinsky advised claimant to use the cane as needed, not all the time, and note from Dr. Krinsky indicated that she only occasionally used a cane. Claimant testified to very limited activities of daily living, stating that her daughter helps with cooking, cleaning and shopping, which seems at odds with her report to the consultative examiner that she can do light chores around the house but not vacuuming, cleaning tubs or kneeling and bending. Despite her complaints of back pain, objective evidence only revealed mild degenerative disc disease of the lumbar spine. Finally, contrary to claimant's testimony, all of the treatment notes document that claimant's knee problem improved following her second surgery.

(*Id.* at 20-21.)

In determining Plaintiff's residual functional capacity, the ALJ placed great weight on the opinion of Dr. Rana "based on h[er] examining relationship and because his conclusions are the most consistent with the objective findings in the medical records." (*Id.* at 20.) Dr. Rana, a consultative examiner, completed an internal medicine evaluation on April 9, 2010. (*Id.* at 362.) In her report, she noted that none of Plaintiff's previous medical records were available for review and that Plaintiff was providing her medical history herself. *(Id.)* Dr. Rana indicated that Plaintiff's chief complaints were pain in the knees, carpal tunnel syndrome, lower back pain, high blood pressure, hypercholesterolemia, and heartburn. *(Id.)* The physical examination Dr. Rana

conducted revealed mild lower back tenderness and mild tenderness in both knees. (*Id.* at 363, 364.) Dr. Rana diagnosed Plaintiff with chronic pain in her knees, probable mild carpal tunnel syndrome in both hands, lower back pain most probably secondary to mild degenerative disc/degenerative joint disease, a history of hypertension, hypercholesterolemia, and probable gastroesophageal reflux disease. (*Id.* at 364.) She opined that Plaintiff can (1) stand and walk for four hours in an eight-hour day with breaks, (2) sit for six hours in an eight-hour day with breaks, (3) carry 10 pounds frequently and 20 pounds occasionally, (4) push and pull devices up to 20 pounds, (5) occasionally bend, squat, kneel, crouch, climb, and crawl, and (5) ambulate over three to four blocks with use of a cane. *(Id.)*

The ALJ gave some weight to the Dr. Charles' assessment, "to the extent consistent with Dr. Rana's." (*Id.* at 20.) Dr. Charles examined Plaintiff on two occasions, first on October 30, 2008 and a second time on January 13, 2010. (*Id.* at 488-497, 506-509.) In his first report, Dr. Charles opined that Plaintiff had suffered a probable medial meniscus tear. *(Id.)* He ordered an MRI, the results of which were "consistent with a recurrent flap tear of the medial meniscus and free edge lateral meniscal tear." (*Id.* at 498.) In his second report, Dr. Charles noted that Plaintiff underwent a second surgery on June 8, 2009, at which time Dr. Krinsky, who performed the surgery, noted a new tear in the anterior horn of the medial meniscus. (*Id.* at 492.) Dr. Charles also noted that there was marked swelling in Plaintiff's right knee. (*Id.* at 489, 491.) He considered Plaintiff to be a candidate for a total knee replacement. (*Id.* at 496.)

The ALJ placed little weight on the opinions of Dr. Young, one of Plaintiff's treating physicians, and Dr. Krinsky, who performed Plaintiff's knee surgeries. (*Id.* at 20.) Dr. Krinsky completed a medical source statement on August 12, 2011. (*Id.* at 571-75.) According to Dr. Krinsky, Plaintiff's first visit to his office occurred on February 12, 2008 and continued on a monthly basis. *(Id.)* Dr. Krinsky opined that Plaintiff can sit for less than two hours in an eight-hour workday and stand/walk for less than two hours in an eight-hour workday. (*Id.* at 574.) He also opined that plaintiff would have to walk every 15 minutes for five minutes at a time, would need a job that allowed her to shift positions at will because of pain, muscle weakness, and chronic fatigue, would need to take 15-minute unscheduled breaks every 30 minutes, and would have to

7

elevate her leg to chair width. *(Id.)* He also indicated that Plaintiff must use a cane or other assistive device and that she would be absent from work more than four days per month due to her impairments or treatment. (*Id.* at 574, 575.)

The ALJ considered Dr. Krinsky's progress notes "completely inconsistent with his assessment of [*sic*] that claimant could sit/stand/walk less than 2 hours." (*Id.* at 20.) She noted that Dr. Krinsky returned Plaintiff to full duty as of November 11, 2009, but indicated that there was no work available. *(Id.)* She also noted that (1) treatment notes from January 2010 indicated that claimant only occasionally uses a cane, (2) notes from March and May 2010 indicated that there was still no work available, (3) notes from September 2010 indicated that claimant was getting better by the week but that no work was available, and (4) opinions from July 2010 and August 2011 were primarily based on claimant's subjective complaints. *(Id.)* The ALJ stated that treatment records clearly showed that Plaintiff improved following the second knee procedure. *(Id.)*

The ALJ did not give any reasons for placing little weight on Dr. Young's opinion other than stating that his opinion "appear[ed] to be primarily based on the claimant's subjective complaints." (*See id.*) Dr. Young had completed a physician's medical source statement on July 14, 2010, in which he indicated that he had seen Plaintiff on a monthly basis since March 4, 2009. (*Id.* 439-42.) He noted that Plaintiff's prognosis was "guarded," that Plaintiff complained of throbbing pain in her right knee that is worse when standing and sitting for prolonged periods of time. *(Id.)* He stated that Plaintiff is a candidate for total knee replacement. *(Id.)* He opined that Plaintiff would need to take a 15-minute unscheduled break at least every hour, that Plaintiff would need to elevate her leg between 6-12 inches with prolonged sitting for approximately 10-20% of the workday, and that Plaintiff must use a cane or other assistive device. *(Id.)* He also opined that Plaintiff would likely be absent from work for more than four days per month as a result of her impairments or treatment. (*Id.* at 442.)

At step four, the ALJ determined that Plaintiff's medical impairments did not preclude her from performing her past relevant work as a customer service clerk or as a floor supervisor at a call center. (*Id.* at 21.) She relied on the VE's testimony that an individual with Plaintiff's

8

1  limitations could perform that type of work.  *(Id.)*  The ALJ found that Plaintiff "is able to perform
2  these jobs as actually and generally performed," and concluded that Plaintiff has not been under a
3  disability from June 30, 2007, the alleged onset date, through September 23, 2011, the date of her
4  decision.  *(Id.)*

5  Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision.  (*Id.* at
6  10.)  The Appeals Council denied review on May 17, 2013, and the ALJ's decision became the
7  final decision of the Commissioner.  (*Id.* at 1-6.)

### D. District court proceedings

Plaintiff filed her complaint in this Court on July 17, 2013, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  The parties filed their cross-motions for summary judgment, and the Court entered judgment in favor of Plaintiff on September 10, 2014.  The case was remanded to the SSA for further proceedings so that the ALJ could give proper consideration to Dr. Young's opinion and revisit her adverse credibility determination as well as the hypotheticals she posed to the VE.  (Sept. 10, 2014 Order at 10-11, Dkt. No. 23.)  While, in her motion for summary judgment, Plaintiff argued that "[a]t a minimum the case should be remanded with instructions that any vocational hypothetical questions should include [Plaintiff's] particular restrictions," she now asks that the Court reconsider her alternative request for a remand for immediate payment of benefits.  (*See* Pl.'s Mot. Summ. J. at 27, Dkt. No. 16; Pl.'s Mot. Alter J. ("Pl.'s Mot.") at 1-2, Dkt. No. 26.)  She argues that the instant motion is necessary to prevent manifest injustice within the meaning of Federal Rule of Civil Procedure 59(e)(3).  (Pl.'s Mot. at 2.)

## II. LEGAL STANDARD

"There are four grounds upon which a Rule 59(e) motion may be granted:  1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law.  *Turner v. Burlington N. Santa Fe. R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citations and internal quotations omitted).  Rule 59(e) "offers an extraordinary remedy, to be used sparingly in

the interests of finality and conservation of judicial resources." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations omitted). A district court has considerable discretion when deciding a Rule 59(e) motion. *Turner*, 338 F.3d at 1063.

## III.   DISCUSSION

Plaintiff brings the instant motion on the ground that it is necessary to prevent manifest injustice within the meaning of Rule 59(e)(3). (Pl.'s Mot. at 2.) She argues that remanding the case for further proceedings would unnecessarily prolong the proceedings and further delay "a proper determination" in this case, which she has been waiting on for almost five years. *(Id.)* She contends that "because of the credit-as-true rule, this case should not be remanded for further proceedings, but, remanded for immediate payment of benefits." *(Id.)* She persuasively argues why that rule should be applied in this case and why it warrants the desired outcome. (*Id.* at 5-8.)

In opposition, the Commissioner asserts that none of the grounds upon which a Rule 59(e) motion may be granted are present here. (Def.'s Opp'n at 2, Dkt. No. 29.) She also contests the validity of the credit-as-true rule,[3] but nonetheless argues that even if the rule were proper, it does not warrant a remand for immediate payment of benefits in this case. (*Id.* at 3-4.) According to the Commissioner, the record here raises serious doubts as to whether Plaintiff is disabled. (*Id.* at 4.)[4]

### A.   The credit-as-true standard

The Ninth Circuit has articulated "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award

---

[3] The Ninth Circuit has rejected the Commissioner's long-standing position on the validity of the credit-as-true rule. *See Garrison v. Colvin*, 759 F.3d 995, 1020 n. 25 (9th Cir. 2014) ("The Commissioner contends that the credit-as-true rule is invalid. As he concedes, this argument is foreclosed by precedent.").

[4] The Commissioner takes issue with Plaintiff's reliance on the Ninth Circuit's decision in *Garrison v. Colvin*, which was not available until after the parties briefed their cross-motions for summary judgment. *See* Def.'s Opp'n at 2-3. She contends that Plaintiff had ample opportunity to bring the decision to the Court's attention. *Id.* at 3. To the extent the Commissioner suggests that this should somehow undermine Plaintiff's position, she has now had ample opportunity to respond to Plaintiff's substantive arguments in her opposition to the instant motion. Any delay by Plaintiff in bringing this decision to the Court's attention does not, therefore, prejudice the Commissioner in any way.

benefits." *Garrison*, 759 F.3d at 1020. The standard is met where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (footnote and citations omitted). If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled" a remand for further proceedings is appropriate, "even though all conditions of the credit-as-true rule are satisfied." *Id.* at 1021.

        1.    <u>The record has been fully developed, and further administrative proceedings would serve no useful purpose.</u>

In the instant motion, Plaintiff argues that the record has been fully developed, leaving no outstanding issues to be resolved before a determination can be made. (Pl.'s Mot. at 5.) She highlights that during the administrative hearing, Plaintiff's counsel formulated hypotheticals and questioned the VE based on the limitations posited by Dr. Young. *(Id.)* The VE responded to those hypotheticals by stating that a person with that residual functional capacity could not work. *(Id.)*

In her opposition, the Commissioner does not address the significance of the VE's testimony. (*See* Def.'s Opp'n.) Instead, she suggests that the ALJ should have a second chance to resolve the conflicts between the opinions of Dr. Rana and Dr. Young. (*Id.* at 4.) The Court disagrees. *See Garrison*, 759 F.3d at 1021 (rejecting "the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of the credit-as-true analysis").

Here, Plaintiff's characterization of the proceedings is accurate. The ALJ elected to pose hypotheticals to the VE based on the limitations she found credible. (*See* Sept. 10, 2014 Order at 10-11.) The VE's responses to these hypotheticals were unfavorable to Plaintiff, as the VE determined that an individual with such limitations could perform some of Plaintiff's past relevant work, whether as a customer service clerk or a floor supervisor in a call center. (AR at 73-74.)

Plaintiff's counsel, however, also formulated her own set of hypotheticals using the limitations the ALJ would have been required to accept if she had properly credited Dr. Young's

11

opinion.[5] *(Id.)* In response of these hypotheticals, the VE testified that an individual who needed to elevate one leg between 6 to 12 inches 10 to 20 percent of the workday would be precluded from performing Plaintiff's past work as a customer service clerk or a floor supervisor in a call center. (*Id.* at 76.) He also testified that an individual who would need to take a 15-minute unscheduled break once every hour would be precluded from all work, as would an individual who was going to be absent from work four days per month. *(Id.)*

In light of the VE's responses to these hypotheticals, which were formulated using the limitations Dr. Young identified in his medical opinion, the Court agrees with Plaintiff. Here, the record has been fully developed and further proceedings would serve no useful purpose. No additional VE testimony would be necessary to determine the impact Dr. Young's opinion would have on Plaintiff's disability determination if it were credited as true. *See Garrison*, 759 F.3d at 2011 & n.28 (noting that a remand for a residual functional capacity assessment is not warranted when the vocational expert has definitively answered questions about a hypothetical person matching the characteristics that the claimant must be found to possess if the improperly rejected evidence is credited as true). Here, then, the first prong of the credit-as-true standard is met.

>   2.  <u>The ALJ failed to provide legally sufficient reasons for rejecting Dr. Young's opinion.</u>

Plaintiff next argues that the ALJ failed to properly consider Dr. Young's opinion and improperly adopted Dr. Rana's contradictory opinion. *(Id.)* The Court found these arguments persuasive when Plaintiff originally advanced them:

> Plaintiff argues, and the Court agrees, that the ALJ erred when she did not give Dr. Young's opinion controlling weight without providing sufficient reasons for doing so. (Pl.'s Mot. Summ. J. at 20.) In her decision, the ALJ stated that she placed little weight on his opinion solely because it was based on Plaintiff's subjective pain complaints. (AR at 20.) While Dr. Young's report includes a list of Plaintiff's symptoms, it also references diagnoses that reflect Plaintiff's status following her two surgeries, and it notes that Plaintiff visited Dr. Young on a monthly basis beginning in March 4, 2009. (*Id.* at 439.) In his report, Dr. Young also noted that Plaintiff's right knee MRI showed a recurrent tear and moderate osteoarthritis. *(Id.)* In short, the report includes more than a mere recitation of

---

[5] Dr. Young opined that Plaintiff would need to take a 15-minute unscheduled break at least every hour, would have to elevate her leg between 6-12 inches with prolonged sitting for approximately 10-20% of the workday, and would likely be absent from work for more than four days per month. AR at 442.

12

>Plaintiff's subjective pain complaints. In light of this, the ALJ's reason for placing little weight on Dr. Young's opinion, i.e., that the opinion was based on Plaintiff's subjective pain complaints, is not legitimate and unsupported by substantial evidence.
>
>Accordingly, the ALJ erred in failing to properly consider Dr. Young's opinion.

(Sept. 10, 2014 Order at 10-11.)

With respect to the ALJ's treatment of Dr. Rana's opinion, the Court determined that the ALJ also erred when she gave the opinion outcome-determinative weight. (*Id.* at 11.) The Court found that Dr. Rana did not make independent findings but merely posited different limitations than those Dr. Young ascribed to Plaintiff. *(Id.)* Based on this, the Court concluded that Dr. Rana's opinion did not justify the ALJ's failure to assign Dr. Young's opinion proper weight. (*Id.* (citation omitted).)[6]

This satisfies the second prong of the credit-as-true standard. *See Garrison*, 759 F.3d at 1022.

### 3. If Dr. Young's opinion were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

Plaintiff finally argues that if Dr. Young's opinion were credited as true, the ALJ would be required to find her disabled. (Pl.'s Mot. at 7.) She highlights that the VE explicitly testified that a person suffering from the impairments Dr. Young ascribed to Plaintiff could not work, and she argues that if Dr. Young's opinion were credited as true, Plaintiff could not engage in past relevant work, or any other work, thus warranting a finding of disability. *(Id.)*

The Commissioner argues that remanding this case for an award of benefits solely because of Dr. Young's opinion would conflict with the proposition that a court "'must consider the entire record as a whole' and may not rely on isolated evidence." (Def.'s Opp'n at 5 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 992 (9th Cir. 2006)). Again, the Court disagrees.

As Plaintiff points out, she provided the type of evidence the SSA prefers—treating source evidence. (*See* Pl.'s Reply at 3.) That evidence is more than the isolated quantum of supporting evidence the Commissioner claims it is. Indeed, Dr. Young's opinion is consistent with those of

---

[6] The Commissioner does not challenge this determination, she merely argues that the ALJ should have an opportunity to provide the legally sufficient reasons she failed to give in the first instance. Def.'s Opp'n at 5. As the Court has already noted, this contravenes controlling Ninth Circuit authority.

Dr. Charles and Dr. Krinsky. Dr. Charles considered Plaintiff to be a candidate for a total knee replacement. (*See* AR at 496.) Dr. Krinsky, who performed Plaintiff's two knee surgeries, also opined that Plaintiff can sit for less than two hours in an eight-hour workday, stand/walk for less than two hours in eight-hour workday, would have to walk every 15 minutes for five minutes at a time, would have to take 15-minute unscheduled breaks every 30 minutes, would have to elevate her leg to chair width, and would be absent from work more than four days per month due to her impairments or treatment. (*Id.* at 574, 575.)

Based on this, Dr. Young's opinion is consistent with the other evidence in the record. For this reason, the limitations he ascribed to Plaintiff—the same limitations the VE considered when testifying that a person who suffered from them would be precluded from performing all work—if credited-as-true, would require a finding of disability on remand. This meets the final prong of the credit-as-true standard. *See Garrison*, 759 F.3d at 1023.

### 4. The record does not raise serious doubt as to whether Plaintiff is disabled.

The Commissioner suggests that the Court should not adhere to the credit-as-true standard in this instance because the record here casts "serious doubt" as to whether Plaintiff is disabled based on the conflicting opinions of Dr. Rana and Dr. Young. (*See* Def.'s Opp'n at 3-4.) But the Court finds that, for all of the reasons set forth above, no such doubt exists on this record. Accordingly, because Plaintiff has established that all three parts of the credit-as-true rule are satisfied here, a remand for calculation and award of benefits is appropriate. *See Garrison*, 759 F.3d at 1023. Allowing further administrative proceedings to take place would, therefore, constitute manifest injustice. Indeed, one purpose of the credit-as true rule is to prevent undue delay. *See Garrison*, 759 F.3d at 1019. Further administrative proceedings to resolve issues that the ALJ had ample opportunity to address in the first instance would frustrate that purpose.

///
///
///
///
///

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion to alter the Court's September 10, 2014 judgment is GRANTED. The case is hereby REMANDED for calculation and payment of benefits.

**IT IS SO ORDERED**.

Dated: 12/12/14

KANDIS A. WESTMORE
United States Magistrate Judge