1
2
3
4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET D. CONNER,<br><br>          Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br><br>          Defendant. | Case No.  13-cv-03324-KAW<br><br>**ORDER GRANTING MOTION TO ALTER JUDGMENT**<br><br>Re: Dkt. No. 35 |

On September 10, 2014, the Court granted Plaintiff Janet D. Conner's motion for summary judgment, denied Defendant Carolyn W. Colvin's cross-motion for summary judgment, and remanded the case for further proceedings.  Judgment was entered consistent with that order. Plaintiff moved to alter that judgment pursuant to Federal Rule of Civil Procedure 59(e), seeking a remand for immediate payment of disability insurance benefits.  On December 12, 2014, the Court granted the motion.

It is now the Commissioner who moves to alter judgment pursuant to Rule 59(e).[1]  Plaintiff opposes the motion.  For the reasons set forth below, the motion is GRANTED.

## I.      BACKGROUND

### A.      Plaintiff's applications

Plaintiff filed a Title II application for Social Security Disability Insurance Benefits ("DIB") on January 22, 2010 and a Title XVI application for Supplemental Security Income

---

[1] The parties are advised that Civil Local Rule 7-9 governs motions for reconsideration and requires that parties obtain leave of court prior to filing such motions.  The parties shall ensure that they comply with this requirement in the future.

United States District Court<br>Northern District of California

("SSI") on January 27, 2010. (Administrative Record ("AR") at 78-79, 136-37, 139-43.) She alleged that she became disabled on June 30, 2007, due to right knee pain, hand pain, back pain, and high blood pressure. (*Id.* at 82, 91, 136, 140.) The Social Security Administration ("SSA") denied Plaintiff's applications initially and on reconsideration. (*Id.* at 82-86, 91-95.)

**B.    The administrative hearing**

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 96.) ALJ Mary P. Parnow held the hearing on August 29, 2011. (AR at 96-97.) Plaintiff, who was represented by counsel, testified at the hearing, as did Malcolm J. Brodzinsky, a vocational expert ("VE").

1.    Plaintiff's testimony

Plaintiff testified that she was 53 years old at the time of the hearing, possessed a high school diploma, and had last worked in July 2008, doing part-time office work at a warehouse. (*Id.* at 52.) She stated that she stopped doing that work because sitting bothered her, she was taking breaks and "they didn't like that." (*Id.* at 53.) She indicated that every 30 minutes, she would elevate her leg for about 10 minutes and that she could not work while doing so because of the pain. (*Id.*) At home, she elevates her leg on two pillows for at least five or six hours because she's in bed most of the time. (*Id.* at 64.) She does this because of the pain and to take some pressure off her knee. (*Id.* at 65.)

Prior to her office work, Plaintiff was employed as a catering cook and pastry chef for about three years. (*Id.* at 53-54.) In that position, she would cook, cater, and serve food at different events. (*Id.* at 54.) She would also lift chaffing dishes weighing approximately 20 to 25 pounds. (*Id.* at 54-55.) Before her work as a cook and pastry chef, Plaintiff worked as a floor supervisor at a telephone call center, supervising 60 operators, walking the floor, taking over phone calls, and troubleshooting. (*Id.* at 55.) She held that job for three years. (*Id.* at 56.) She testified that she would not be able to return to that type of work because of "the sitting for periods of time and the walking and [her] hands are messed up and [her] back." (*Id.*) She also indicated that she worked as a dishwasher and a cook at a soul food restaurant, and did some work at a bakery at one point. (*Id.* at 58.)

United States District Court
Northern District of California

1      Plaintiff further testified that she had been receiving worker's compensation as a result of a

2  knee injury she sustained while lifting a chaffing dish during a catering event.  (*Id.* at 60.)  She

3  indicated that the claim had been settled, and a portion of the settlement was intended to cover a

4  knee replacement.  *(Id.)*  According to Plaintiff, she experiences a "dull throbbing pain all the

5  time," her knee is stiff in the morning, and it's worse during cold weather.  *(Id.)*  She stated that it

6  takes her "a minute to get around, to unwind a little bit," and sometimes she has to ice her knee

7  before she bathes.  *(Id.)*

8      Plaintiff indicated that she had two surgeries and went to therapy twice.  (*Id.* at 61.)  After

9  the first surgery,[2] she felt "a little relief at first, [and she] even tried to go back to work" but then

10  she went back to the doctor and needed another surgery.  *(Id.)*  She stated that she experienced no

11  relief after the second surgery.  *(Id.)*  Her pain is about a seven or eight in the morning when she

12  first wakes up, and she can get the pain down to a five or six after she ices her knee and takes her

13  pain pills.  (*Id.* at 61-62.)  At the time of her second surgery,[3] her doctor advised her that she

14  needed a knee replacement.  (*Id.* at 61.)

15      With respect to other impairments, Plaintiff testified that she's been diagnosed with sciatic

16  nerve, arthritis, and depression.  (*Id.* at 62.)  She also testified that she can sit and stand for about

17  15-20 minutes, walk for about a half block before stopping to take a break, and lift "maybe five

18  pounds."  (*Id.* at 62, 63.)  She stated that she cannot lift her one-year old grandchild.  (*Id.* at 64.)

19  She also indicated that she has problems with concentration and focus as a result of her pain

20  medication.  (*Id.* at 65.)  On one occasion, she forgot she was boiling eggs and woke up to the

21  sound of her smoke detector, and on another, she left some water running.  *(Id.)*  Plaintiff also

22  stated that some of her medications give her bad headaches, sweats, and trouble sleeping.  (*Id.* at

23  65, 66.)  She takes hydrocodone once every eight hours or once every four hours if the pain is bad.

24  (*Id.* at 66.)

25

26

27  [2] Plaintiff underwent her first surgery to repair a right knee medial meniscus tear on February 6, 2008.  AR at 284.

28  [3] Plaintiff's second surgery occurred on June 8, 2009.  *Id.* at 289.

United States District Court
Northern District of California

1    Plaintiff also testified that she lives alone in an apartment and that her daughter, who was

2    28 at the time of the hearing, visits about four times a week.  (*Id.* at 67, 68.)  She helps with the

3    cleaning, does the grocery shopping, and prepares her mother's meals for the week, which Plaintiff

4    reheats in the microwave.  (*Id.* at 67, 68.)  As for common day-to-day activities, Plaintiff stated

5    that she can wash her hair on her own, which she keeps short because it's easier to manage, she

6    does not drive because it causes her too much pain, and she does not go out or socialize too much

7    but goes to church when she can, where she sits in the back so that she does not interrupt everyone

8    when she has to get up and go outside.  (*Id.* at 69, 70.)

9              2.    The VE's testimony

10   The VE testified that Plaintiff's past work as a catering cook was semi-skilled work with a

11   light physical demand.  (*Id.* at 72.)  He classified her work as a customer service clerk as skilled

12   work with sedentary physical demands.  (*Id.*)  Plaintiff's work as a dishwasher was unskilled

13   medium work, while her work as a cook was skilled work with medium physical demands.  (*Id.* at

14   73.)  Her work as a floor supervisor at a call center qualified as skilled work with sedentary

15   physical demands.  (*Id.*)

16   The VE considered various hypotheticals posed by the ALJ and by Plaintiff's counsel.

17   (*Id.*)  The ALJ asked the VE to first consider an individual who was 48 at onset, 53 at the time of

18   the hearing, with a high school education, and with the past relevant work he had described.  (*Id.*)

19   This individual could (1) stand and walk for four hours in an eight hour day, with breaks, (2) sit

20   for six hours in an eight hour day, also with breaks, (2) carry 10 pounds frequently and 20 pounds

21   occasionally, (3) push and pull devices up to 20 pounds, (4) occasionally bend, squat, kneel,

22   crouch, climb, and crawl, and (5) would need a cane for ambulation over three to four blocks.

23   (*Id.*)  When asked whether such an individual could perform Plaintiff's past relevant work, the VE

24   stated that the individual could be a customer service clerk and a floor supervisor in a call center.

25   (*Id.* at 74.)

26   The ALJ then asked the VE to consider an individual with the same age, education, and

27   work experience, but with different limitations.  (*Id.*)  This individual could not crawl, kneel,

28   climb, push or pull "in regards to the right knee" and would be restricted to light work as defined

4

1   in the worker's compensation context (i.e., work that involves standing or walking with minimal

2   demands for physical effort). *(Id.)* In considering this second hypothetical, the VE gave the same

3   response. *(Id.)*

4       Plaintiff's attorney asked the VE to revisit the first hypothetical, with the additional

5   limitation that the individual would require a cane for all standing and walking. *(Id.* at 75.) When

6   asked whether that would alter his previous response, the VE stated that it would remain

7   unchanged. *(Id.)*

8       Plaintiff's counsel also asked the VE to reconsider the second hypothetical as if it

9   concerned an individual who needed to sit and stand at will. *(Id.)* In response to that modified

10  hypothetical, the VE testified that the additional limitation would preclude both positions absent

11  an accommodation. *(Id.)*

12      The VE, also in response to additional hypotheticals posed by Plaintiff's attorney, testified

13  that an individual who needed to elevate one leg between six to 12 inches 10 to 20 percent of the

14  workday would be precluded from performing that work. *(Id.)* When considering an individual

15  who would need to take a 15-minute unscheduled break once every hour, the VE testified that

16  such a limitation would preclude all work. *(Id.* at 76.) He further testified that if someone who

17  was performing the work mentioned in either of the ALJ's two hypotheticals was going to be

18  absent four days per month, that would "preclude that work and all other work." *(Id.* at 76.)

19      **C.     The ALJ's decision**

20      On September 23, 2011, the ALJ issued an unfavorable decision. *(Id.* at 15-22). In

21  reaching her decision, the ALJ followed the five-step sequential process that governs Social

22  Security disability determinations. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a). At step one, the

23  ALJ found that Plaintiff has not engaged in substantial gainful activity since June 30, 2007, the

24  alleged onset date. *(Id.* at 17.) At step two, the ALJ determined that Plaintiff suffers from two

25  severe impairments: right knee injury status post two partial right knee meniscectomies and

26  obesity. *(Id.)* She based that determination on "[t]he evidence of record, including the testimony

27  of the claimant[,]" which supported a finding that these "medical impairments significantly limit

28  her ability to perform basic work activities." *(Id.)* At step three, the ALJ determined that Plaintiff

United States District Court
Northern District of California

5

1   does not have an impairment or combination of impairments that meets or medically equals one of

2   the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.  (*Id.* at 18.)  She found that the

3   medical evidence did not support a finding to the contrary.  (*Id.*)

4          Before proceeding to step four, the ALJ determined that Plaintiff has the residual

5   functional capacity to carry 20 pounds occasionally and 10 pounds frequently, stand and walk for

6   four hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and pull

7   devices up to 20 pounds.  (*Id.* at 18-21.)  She also determined that Plaintiff can occasionally bend,

8   squat, kneel, crouch, climb, and crawl, though "a cane is required for ambulation over 3 to 4

9   blocks."  (*Id.*)  The ALJ also found that Plaintiff's medically determinable impairments could

10  reasonably be expected to cause the alleged symptoms, but that her statements concerning the

11  intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they

12  [we]re inconsistent with the above residual functional capacity assessment."  (*Id.* at 20.)  To

13  support this finding, the ALJ stated:

> The objective evidence does not support the claimant's allegations.  Claimant was
> released to work, and it appears only did not work because there was no work
> available.  Further, despite the claimant's complaints of hand problems, there were
> no sensory or motor deficits noted in hands at consultative examination.   In
> addition, in regard to the claimant's cane, Dr. Krinsky advised claimant to use the
> cane as needed, not all the time, and notes from Dr. Krinsky indicated that she only
> occasionally used a cane.  Claimant testified to very limited activities of daily
> living, stating that her daughter helps with cooking, cleaning and shopping, which
> seems at odds with her report to the consultative examiner that she can do light
> chores around the house but not vacuuming, cleaning tubs or kneeling and bending.
> Despite her complaints of back pain, objective evidence only revealed mild
> degenerative disc disease of the lumbar spine.  Finally, contrary to claimant's
> testimony, all of the treatment notes document that claimant's knee problem
> improved following her second surgery.

(*Id.* at 20-21.)

23          In determining Plaintiff's residual functional capacity, the ALJ placed great weight on the

24  opinion of Dr. Rana "based on h[er] examining relationship and because his conclusions are the

25  most consistent with the objective findings in the medical records."  (*Id.* at 20.)  Dr. Rana, a

26  consultative examiner, completed an internal medicine evaluation on April 9, 2010.  (*Id.* at 362.)

27  In her report, she noted that none of Plaintiff's previous medical records were available for review

28

1  and that Plaintiff was providing her medical history herself. *(Id.)* Dr. Rana indicated that

2  Plaintiff's chief complaints were pain in the knees, carpal tunnel syndrome, lower back pain, high

3  blood pressure, hypercholesterolemia, and heartburn. *(Id.)* The physical examination Dr. Rana

4  conducted revealed mild lower back tenderness and mild tenderness in both knees. *(Id.* at 363,

5  364.) Dr. Rana diagnosed Plaintiff with chronic pain in her knees, probable mild carpal tunnel

6  syndrome in both hands, lower back pain most probably secondary to mild degenerative

7  disc/degenerative joint disease, a history of hypertension, hypercholesterolemia, and probable

8  gastroesophageal reflux disease. *(Id.* at 364.) She opined that Plaintiff can (1) stand and walk for

9  four hours in an eight-hour day with breaks, (2) sit for six hours in an eight-hour day with breaks,

10  (3) carry 10 pounds frequently and 20 pounds occasionally, (4) push and pull devices up to 20

11  pounds, (5) occasionally bend, squat, kneel, crouch, climb, and crawl, and (5) ambulate over three

12  to four blocks with use of a cane. *(Id.)*

13  The ALJ gave some weight to the Dr. Charles' assessment, "to the extent consistent with

14  Dr. Rana's." *(Id.* at 20.) Dr. Charles examined Plaintiff on two occasions, first on October 30,

15  2008 and a second time on January 13, 2010. *(Id.* at 488-497, 506-509.) In his first report, Dr.

16  Charles opined that Plaintiff had suffered a probable medial meniscus tear. *(Id.)* He ordered an

17  MRI, the results of which were "consistent with a recurrent flap tear of the medial meniscus and

18  free edge lateral meniscal tear." *(Id.* at 498.) In his second report, Dr. Charles noted that Plaintiff

19  underwent a second surgery on June 8, 2009, at which time Dr. Krinsky, who performed the

20  surgery, noted a new tear in the anterior horn of the medial meniscus. *(Id.* at 492.) Dr. Charles

21  also noted that there was marked swelling in Plaintiff's right knee. *(Id.* at 489, 491.) He

22  considered Plaintiff to be a candidate for a total knee replacement in the future. *(Id.* at 496.)

23  The ALJ placed little weight on the opinions of Dr. Young, one of Plaintiff's treating

24  physicians, and Dr. Krinsky, who performed Plaintiff's knee surgeries. *(Id.* at 20.) Dr. Krinsky

25  completed a medical source statement on August 12, 2011. *(Id.* at 571-75.) According to Dr.

26  Krinsky, Plaintiff's first visit to his office occurred on February 12, 2008 and continued on a

27  monthly basis. *(Id.)* Dr. Krinsky opined that Plaintiff can sit for less than two hours in an eight-

28  hour workday and stand/walk for less than two hours in an eight-hour workday. *(Id.* at 574.) He

United States District Court
Northern District of California

1    also opined that plaintiff would have to walk every 15 minutes for five minutes at a time, would

2    need a job that allowed her to shift positions at will because of pain, muscle weakness, and chronic

3    fatigue, would need to take 15-minute unscheduled breaks every 30 minutes, and would have to

4    elevate her leg to chair width. *(Id.)* He also indicated that Plaintiff must use a cane or other

5    assistive device and that she would be absent from work more than four days per month due to her

6    impairments or treatment. (*Id.* at 574, 575.)

7         The ALJ considered Dr. Krinsky's progress notes "completely inconsistent with his

8    assessment of [*sic*] that claimant could sit/stand/walk less than 2 hours." (*Id.* at 20.) She noted

9    that Dr. Krinsky returned Plaintiff to full duty as of November 11, 2009, but indicated that there

10   was no work available. *(Id.)* She also noted that (1) treatment notes from January 2010 indicated

11   that claimant only occasionally uses a cane, (2) notes from March and May 2010 indicated that

12   there was still no work available, (3) notes from September 2010 indicated that claimant was

13   getting better by the week but that no work was available, and (4) opinions from July 2010 and

14   August 2011 were primarily based on claimant's subjective complaints. *(Id.)* The ALJ stated that

15   treatment records clearly showed that Plaintiff improved following the second knee procedure.

16   *(Id.)*

17        The ALJ did not give any reasons for placing little weight on Dr. Young's opinion other

18   than stating that his opinion "appear[ed] to be primarily based on the claimant's subjective

19   complaints." (*See id.*) Dr. Young had completed a physician's medical source statement on July

20   14, 2010, in which he indicated that he had seen Plaintiff on a monthly basis since March 4, 2009.

21   (*Id.* 439-42.) He noted that Plaintiff's prognosis was "guarded," that Plaintiff complained of

22   throbbing pain in her right knee that is worse when standing and sitting for prolonged periods of

23   time. *(Id.)* He stated that Plaintiff is a candidate for total knee replacement in the future. *(Id.)* He

24   opined that Plaintiff would need to take a 15-minute unscheduled break at least every hour, that

25   Plaintiff would need to elevate her leg between 6-12 inches with prolonged sitting for

26   approximately 10-20% of the workday, and that Plaintiff must use a cane or other assistive device.

27   *(Id.)* He also opined that Plaintiff would likely be absent from work for more than four days per

28   month as a result of her impairments or treatment. (*Id.* at 442.)

1   At step four, the ALJ determined that Plaintiff's medical impairments did not preclude her

2   from performing her past relevant work as a customer service clerk or as a floor supervisor at a

3   call center.  (*Id.* at 21.)  She relied on the VE's testimony that an individual with Plaintiff's

4   limitations, as the ALJ determined them, could perform that type of work.  *(Id.)*  The ALJ found

5   that Plaintiff "is able to perform these jobs as actually and generally performed," and concluded

6   that Plaintiff has not been under a disability from June 30, 2007, the alleged onset date, through

7   September 23, 2011, the date of her decision.  *(Id.)*

8   Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision.  (*Id.* at

9   10.)  The Appeals Council denied review on May 17, 2013, and the ALJ's decision became the

10   final decision of the Commissioner.  (*Id.* at 1-6.)

11   **D.     District court proceedings**

12   Plaintiff filed her complaint in this Court on July 17, 2013, seeking judicial review of the

13   Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  The parties

14   filed their cross-motions for summary judgment, and the Court entered judgment in favor of

15   Plaintiff on September 10, 2014.  The case was remanded to the SSA for further proceedings so

16   that the ALJ could give proper consideration to Dr. Young's opinion and revisit her adverse

17   credibility determination as well as the hypotheticals she posed to the VE.  (Sept. 10, 2014 Order

18   at 10-11, Dkt. No. 23.)  On October 6, 2014, Plaintiff moved to alter or amend judgment pursuant

19   to Rule 59(e).  (Pl.'s Mot., Dkt. No. 26.)  The Commissioner filed her opposition to the motion on

20   October 27, 2014, and Plaintiff filed her reply on November 14, 2014.  (Def.'s Opp'n, Dkt. No. 29;

21   Pl.'s Reply, Dkt. No. 32.)  The Court granted that motion on December 12, 2014 and remanded the

22   case for immediate payment of benefits.  (Dec. 12, 2014 Order, Dkt. No. 33.)

23   On January 9, 2015, the Commissioner filed her own motion to alter or amend judgment

24   pursuant to Rule 59(e).  (Def.'s Mot., Dkt. No. 35.)  Plaintiff filed her opposition to the motion on

25   January 16, 2015.  (Pl.'s Opp'n, Dkt. No. 36.)  The Commissioner's reply followed on January 23,

26   2015.

27   **II.     LEGAL STANDARD**

28   "There are four grounds upon which a Rule 59(e) motion may be granted:  1) the motion is

United States District Court
Northern District of California

1    necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the

2    moving party presents newly discovered or previously unavailable evidence; 3) the motion is

3    necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law.

4    *Turner v. Burlington N. Santa Fe. R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citations and

5    internal quotations omitted).  Rule 59(e) "offers an extraordinary remedy, to be used sparingly in

6    the interests of finality and conservation of judicial resources."  *Kona Enter., Inc. v. Estate of*

7    *Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations omitted).  A district court has

8    considerable discretion when deciding a Rule 59(e) motion.  *Turner*, 338 F.3d at 1063.

9                                    **III.    DISCUSSION**

10        The Commissioner brings the instant motion on the ground that it is necessary to correct a

11   manifest error of law.  (Def.'s Mot. at 2.)  She argues that this Court should remand the case for

12   further proceedings, as on this record, there is serious doubt as to whether Plaintiff is actually

13   disabled.  (*Id.* at 4.)  According to the Commissioner, this serious doubt stems from the differing

14   opinions of Dr. Young and Dr. Rana and evidence in the record showing that Plaintiff's condition

15   improved following her second surgery.  (*Id.* at 5, 6.)  She further argues that the Court erred when

16   it remanded the case for payment of benefits because the ALJ may be able to provide the specific

17   and legitimate reasons for disregarding Dr. Young's opinion, which the Commissioner considers

18   "isolated evidence" that should not support an award of benefits.  (*Id.* at 9.)  In advancing these

19   arguments, the Commissioner relies on two recent Ninth Circuit opinions, *Treichler v.*

20   *Commissioner of Social Security Administration*, 775 F.3d 1090 (9th Cir. 2014) and *Burrell v.*

21   *Colvin*, 775 F.3d 1133 (9th Cir. 2014).

22        Plaintiff argues that the Commissioner merely rehashes arguments this Court has

23   previously considered and rejected.  (Pl.'s Opp'n at 3.)  Had Defendant not cited recent Ninth

24   Circuit authorities that squarely address the issues contested in this case, the Court may have

25   agreed.  These cases, however, caution courts from too freely applying the credit-as-true rule in

26   cases where, as here, the record contains conflicts that cast doubt on whether a claimant is actually

27   disabled.

28        The Ninth Circuit has articulated "a three-part credit-as-true standard, each part of which

United States District Court
Northern District of California

10

1   must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award

2   benefits." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  The standard is met where "(1)

3   the record has been fully developed and further administrative proceedings would serve no useful

4   purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence,

5   whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence

6   were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.*

7   (footnote and citations omitted).  If, however, "an evaluation of the record as a whole creates

8   serious doubt that a claimant is, in fact, disabled" a remand for further proceedings is appropriate,

9   "even though all conditions of the credit-as-true rule are satisfied." *Id.* at 1021.

10      The claimant in *Treichler v. Commissioner of Social Security Administration* complained

11   of lower back pain, right knee pain, ankle pain, difficulty emptying his bladder, and fecal

12   incontinence after suffering a work-related injury.  775 F.3d at 1094.  Following an unfavorable

13   decision by the Commissioner, the claimant sought judicial review, and the district court affirmed

14   in part and reversed and remanded in part.  *Id.* at 1093.  The claimant appealed, seeking a remand

15   for payment of benefits based on the ALJ's improper adverse credibility finding.  *Id.*

16      The Ninth Circuit determined that the ALJ erred in failing to identify what portions of the

17   claimant's testimony were not credible and in failing to explain how the ALJ arrived at that

18   conclusion.  *Id.*  But, it rejected the argument that claimant's testimony regarding his urinary

19   incontinence, fecal incontinence, and disabling pain, combined with the vocal expert's testimony

20   that a person with such issues would not be able to maintain employment, warranted a remand for

21   payment of benefits.  *Id.* at 1103.  The Ninth Circuit determined that the record contained

22   "significant factual conflicts" between the claimant's testimony and the objective medical

23   evidence.  *Id.* at 1104.  Specifically, the claimant testified that he would lose control of his bladder

24   during the day, though treatment notes showed that the urinary incontinence issue occurred at

25   night.  *Id.*  He also testified that he experienced fecal incontinence, but the one medical report on

26   the issue stated that the claimant complained of constipation and denied problems with fecal

27   incontinence.  *Id.*  The claimant further testified that he had debilitating pain twice a week, though

28   he reported to a physician that his pain medication made life tolerable and stated, during the

United States District Court
Northern District of California

11

1   hearing, that the medication alleviates a lot of the pain.  *Id.*  Based on these conflicts, the Ninth

2   Circuit concluded that a remand for further proceedings, not payment of benefits, was the

3   appropriate remedy.  *Id.* at 1107.

4          In *Burrell v. Colvin*, the Ninth Circuit similarly declined to remand for payment of

5   benefits, opting instead to remand for further proceedings.  There, the claimant alleged that she

6   was disabled based on debilitating headaches resulting from back and neck conditions.  775 F.3d

7   at 1135.  After an unfavorable decision by the Commissioner, the claimant sought judicial review

8   of the decision, and the district court affirmed.  *Id.*  On appeal, the Ninth Circuit concluded that

9   substantial evidence did not support the ALJ's rejection of the claimant's testimony or his rejection

10  of the medical assessment of the claimant's treating physician.  *Id.*

11         It did not, however, require the ALJ to credit either as true.  *Id.* at 1142.  It remanded the

12  case to the Commissioner for further proceeding on an open record because the record as a whole

13  raised serious doubt as to whether the claimant was actually disabled.  *Id.*  This serious doubt

14  stemmed from portions of the record that the ALJ had not discussed, i.e., (1) the claimant's

15  testimony that she could no longer knit, which was contradicted by medical records regarding her

16  hand function, and (2) the fact that the record suggested that the claimant's headaches were

17  secondary to her neck problems, which had improved, "both objectively and subjectively after

18  surgery."  *Id.* at 1142, 1143.

19         As the Commissioner points out, this record does document Plaintiff's medical

20  improvement after her second surgery.[4]  She cites to a November 11, 2009 progress note that

21  reads, in part:  "She ambulates with a normal gait.  There still is some definite discomfort noted

22  but she is indeed doing much better.  We have therefore released her to return to work full duty . . .

23  ."  (Def.'s Mot. at 6 (citing AR at 300).)

24         She also cites to a March 11, 2010 treatment note in which Dr. Krinsky noted "good

25  mobility with some tenderness" and "no swelling."  (Def.'s Mot. at 6 (citing AR at 468).)  He

26  indicated that Plaintiff "still has not had any work" and that she "will continue with her

27  _____

28  [4] Because this argument has merit, the Court need not address the remaining arguments in the
    Commissioner's motion.

United States District Court
Northern District of California

1   independent exercising."  (Def.'s Mot. at 6 (citing AR at 468).)  Dr. Krinsky's May 4, 2010

2   comprehensive report noted similar findings:  "On examination there was slight tenderness

3   medically, no swelling, good motion, and no instability. . . . "  (Def.'s Mot. at 6 (citing AR at

4   466).)  A treatment note from April 14, 2011 also indicated that Plaintiff was "once again dealing

5   quite well with her knee" and that the anti-inflammatory lotion had been "very beneficial."  (Def.'s

6   Mot. at 7 (citing AR at 529).)

7        Plaintiff does not address her medical improvement in her opposition.  Instead, she asserts:

8        Conner agrees with Defendant that in the conventional adjudication of a Social
         Security disability case the presence of unresolved issues warrants remand.  This is
9        not what this Court has determined here.  This is not an ordinary care.  [*sic*]  It is a
         case where disability has indeed been established.

10  (Pl.'s Opp'n at 3.)  Here, it may be that the medical source statements in the record took this

11  medical improvement into account, and it may be that notwithstanding this medical improvement,

12  Plaintiff suffers from limitations that render her disabled.  The Court, however, cannot make these

13  assumptions.  It cannot ignore that Dr. Krinsky released Plaintiff to full duty in November 2009,

14  and it cannot ignore that several of his treatment notes show that Plaintiff improved after her

15  second surgery, even if the elements of the credit-as-true rule would otherwise be met in this case.

16        Had there been medical expert testimony in the record indicating that Plaintiff's knee

17  condition could have improved but nonetheless resulted in the limitations indicated in the medical

18  source statements provided, then the record would be free from any ambiguity as to the severity of

19  her knee condition, and the Court could properly exercise its discretion to remand for payment of

20  benefits instead of for further proceedings.  The ALJ shall obtain such medical expert testimony

21  on remand as well as any additional information that would explain why Dr. Krinsky could release

22  Plaintiff to full duty but nonetheless determine that she suffered from the severe limitations

23  described in his medical source statement.

24  ///

25  ///

26  ///

27  ///

28  ///

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### V.      CONCLUSION

For the reasons set forth above, the Commissioner's motion is GRANTED.  This case is remanded for further proceedings as set forth in this Court's order on the parties' cross-motions for summary judgment.  After assigning proper weight to Dr. Young's opinion as set out in that order, and after obtaining the additional information discussed above, the ALJ shall revisit her disability determination, including step five, if necessary.

**IT IS SO ORDERED**.

Dated: 03/24/15

_____
KANDIS A. WESTMORE
United States Magistrate Judge